LAW LIBRARY

NO. 29902

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF A. S-H.

2010 JUN 28 AM 7:58 FILED

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 07-11653)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Fujise, and Leonard, JJ.)

Father appeals from the Findings of Fact and
Conclusions of Law filed on July 28, 2009; the Order Awarding
Permanent Custody filed on June 29, 2009; the Amended Decision
Re: Trial (Amended Decision) filed on June 26, 2009; and the
Decision Re: Trial (Decision) filed on June 4, 2009 in the Family
Court of the First Circuit (family court).[1] The Decision and
Amended Decision granted the May 29, 2008 Motion for Order
Awarding Permanent Custody and Establishing a Permanent Plan for
A. S-H (A.S-H).

On appeal, Father contends:

(1) The failure of the Department of Human Services
(DHS) to obtain a restraining order against Mother's ex-husband
(Ex-Husband) was a violation of DHS's obligation to provide A.S-H
with a safe foster home and preserve A.S-H's placement with a
family member.

(2) Father's incarceration was an insufficient basis
for the termination of his parental rights. In connection with
this point of error, Father contends that the family court's
Findings of Fact (FOFs) 78 (Tarpley, a DHS social worker, was a
credible witness); 81 (the plan was in the best interest of A.S-
H.); and 82 and 83 (DHS has made reasonable efforts toward
reunification of A.S-H with Father) were erroneous.

---

[1] The Honorable Christine E. Kuriyama presided.

(3) Father was denied due process when the family court denied his request to examine A.S-H's therapist (Therapist). In connection with this point of error, Father contends the family court's FOFs 78 (Tarpley was a credible witness) and 80 (DHS's expert opinions were based on the kind of information reasonably relied on by social workers and child welfare and child protective services experts) were erroneous.

(4) Father also contends FOFs 1-11, 13-14, 16-17, 19-21, 25-32, 36-42, 44, 49, 52-53, 56-60, 62-66, 68-70, 73-77, and 79 were erroneous and Conclusions of Law (COLs) 1 through 12 were wrong. However, Father fails to set forth any argument as to these specific FOFs and COLs. "Points not argued may be deemed waived." Hawai'i Rules of Appellate Procedure Rule 28(b)(7).

Mother is the natural mother of A.S-H, and Father is the natural and legal father of A.S-H. A.S-H. first came to the attention of DHS in June 2002 when A.S-H. tested positive for methamphetamines soon after her birth. After completion of services, DHS closed the case in December 2004. A.S-H. came to the attention of DHS two more times before DHS filed a Petition for Temporary Foster Custody (Petition) on December 27, 2007. The Petition was based upon Mother's failure to provide care for A.S-H. Mother had left A.S-H. with Ex-Husband, who then contacted A.S-H.'s former foster parents to pick up A.S-H. DHS took A.S-H into protective custody and attempted to contact Mother to assess the safety of the family home. DHS was unable to contact Mother and filed the Petition. At that time, Father's probation had been revoked and he was incarcerated at a facility in Arizona.

On February 25, 2009, Mother consented to the termination of her parental rights to A.S-H.

Trial commenced on March 12, 2009. At trial, Tarpley testified that she was a DHS social worker, was authorized to testify on behalf of DHS, and represented the position of DHS. It was DHS's opinion that Father is not presently able nor in the

2

reasonably foreseeable future will be willing to or able to provide A.S-H with a safe family home even with the assistance of a service plan. Even if Father were released immediately, he has not addressed his substance abuse, and DHS has concerns about Father's parenting skills. Father had completed parenting education class, but he has not had substance abuse assessment and treatment, individual counseling, marriage counseling, and intensive home-based services, and has been unable to seek employment. DHS has not been able to assess whether or not Father has benefitted from the services in which he has participated. If Father were released on parole, it would take him at least another six to nine months to complete services. A further delay in permanent placement will made it increasingly difficult for A.S-H to bond to a new family and adjust to new circumstances.

Evidence was adduced at trial of an incident in which Ex-Husband allegedly attempted to abduct A.S-H from her school. Tarpley testified that she had looked into getting a restraining order against Ex-Husband, but had not followed through with filing for one. A.S-H's foster parents had opposed such a proceeding because it would have required them to reveal personal information to Ex-Husband.

Father testified that he thought he would have a parole hearing in September 2009, but he did not know when he might be released prior to the expiration of the full term of his sentence in December 2011. By the time of trial, he had been incarcerated for two years and five months.

On June 4, 2009, the family court issued its Decision, granting the Motion for Permanent Custody.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Father's points of error as follows:

3

(1)   Contrary to Father's first issue on appeal, the evidence supports a conclusion that Tarpley did explore the option of obtaining a restraining order against Ex-Husband, but A.S-H's foster parents opposed that option.

Hawaii Revised Statutes (HRS) § 587-3(a)(1) (Supp. 2009) provides that DHS "shall ensure that foster children:  (1) Live in a safe and healthy home, free from physical, psychological, sexual, and other abuse[.]"  DHS appears to have acted in the best interest of A.S-H and with the intention of keeping A.S-H with the foster parents by (a) respecting the desire of the foster parents not to seek a restraining order and (b) stopping A.S-H's visits with Father, who DHS believed to be the source of information to Ex-Husband regarding A.S-H's whereabouts.  These actions were consistent with the requirements of HRS § 587-3(a)(1).

(2)   As a general rule, Father is correct in arguing that incarceration of a parent does not automatically result in termination of parental rights.  However, where the incarceration exceeds two years from initial placement of the child in foster custody, that general rule does not apply.  In re T.H. & K.H., 112 Hawai'i 331, 336, 145 P.3d 874, 879 (App. 2006).  Father was incarcerated at the time the Petition was filed on December 27, 2007 and was still incarcerated at the time of trial.  Father testified that he did not expect to have a parole hearing until September 2009.  According to Tarpley, even if Father were released in September 2009, it would take another six to nine months for him to complete services.  The additional six to nine months would exceed the two years from A.S-H's first placement into foster custody.  See HRS § 587-73(a) (2006 Repl.).  Based upon the evidence that it was not reasonably foreseeable Father would be able to provide a safe family home within two years from the time A.S-H was first placed in foster custody, the family court's decision to terminate Father's parental rights was not clearly erroneous.  FOFs 78, 81, 82, and 83 were not erroneous.

(3) Father raises, for the first time on appeal, the arguments that his cross-examination of Therapist was for the purpose of testing Tarpley's credibility and that visitation was an issue at trial because Father's parental rights had not yet been terminated. At trial, Father's counsel argued that Father was entitled to examine Therapist on the issue of placement of A.S-H:

> With respect to [Therapist], [DHS] is making its position that [A.S-H] is better off with non-family members than with family members partially due to the concern that [A.S-H] is divulging information or [Father] is divulging information or something. It's a safety issue about [A.S-H]. I didn't have any of that information about [Therapist] until this morning's testimony. I want the opportunity -- I believe [Father] is entitled to the opportunity to cross-examine both of these people [Therapist and John Ioane of the Department of Public Safety] about that information.

When Tarpley confirmed the family court's understanding that the testimony regarding Therapist related solely to visitation, counsel for Father stated: "But that plays into [DHS's] decision to place [A.S-H] with non-relative caretakers." Therefore, it appears the only argument which counsel made was that the examination of Therapist was necessary on the issue of child placement with a non-family member and counsel did not raise in the family court the issues of Tarpley's credibility or visitation as the basis for compelling Therapist to testify.

Father waived the argument that he was entitled to cross-examine Therapist to challenge Tarpley's credibility or to address the issue of visitation. The appellate court is not required to consider issues raised for the first time on appeal. "The appellate court may correct any error appearing on the record, but need not consider a point that was not presented in the trial court in an appropriate manner." HRS § 641-2 (Supp. 2009); see also State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal").

Even if the issue had not been waived, Father's inability to cross-examine Therapist on the issue of placement with a non-family member and the credibility of Tarpley was harmless beyond a reasonable doubt. Father has not shown how Therapist's testimony would have altered the undisputed facts that Father would not be considered for parole until September 2009, Father had not completed a majority of the services required for reunification, and Father could not provide A.S-H. with housing or meet her educational and financial needs. In light of the overwhelming evidence supporting the family court's decision regarding the termination of Father's parental rights, the absence of Therapist's testimony does not appear to have affected a substantial right of Father and therefore must be disregarded. See Hawai'i Family Court Rules Rule 61; see also In re Doe, 100 Hawai'i 335, 343, 60 P.3d 285, 293 (2002). FOFs 78 and 80 were not erroneous.

Therefore,

IT IS HEREBY ORDERED that the Findings of Fact and Conclusions of Law filed on July 28, 2009; the Order Awarding Permanent Custody filed on June 29, 2009; the Amended Decision Re: Trial filed on June 26, 2009; and the Decision Re: Trial filed on June 4, 2009 in the Family Court of the First Circuit are affirmed.

DATED: Honolulu, Hawai'i, January 28, 2010.

On the briefs:

Thomas A. K. Haia
for Father.

Michael G. K. Wong and
Mary Anne Magnier,
Deputy Attorneys General,
for Department of Human
Services.

Presiding Judge

Associate Judge

Associate Judge

6